FRANK H. ROBERTS
Assistant General Counsel
University of Nevada
Nevada Bar No. 914
1664 N. Virginia Street/MS 550
Reno, Nevada  89557-0550
(775) 784-3495
(775) 327-2202  fax
*Attorney for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LANE GROW,

                Plaintiff,

      vs.

ADAM GARCIA, an individual, TODD
RENWICK, an individual, KEVIN
YOUNGFLESH, an individual, ED RINNE,
an individual,

                Defendants.           /

**No.:  3:07-CV-00105-LRH-RAM**

**REPLY IN SUPPORT OF RENEWED
MOTION FOR SUMMARY JUDGMENT,
Doc. #133**

      Defendants Adam Garcia, Todd Renwick, and Ed Rinne, by and through their counsel, Frank H. Roberts, UNR Assistant General Counsel, hereby submit their REPLY IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGEMENT, Doc. #133.

      DATED this 26th day of April, 2010.

                                    /s/   Frank Roberts
                                Assistant General Counsel
                                University of Nevada
                                Nevada Bar No. 914
                                1664 N. Virginia Street/MS 550
                                Reno, Nevada  89557-0550
                                (775) 784-3495
                                (775) 327-2202  fax
                                *Attorney for Defendants*

## POINT AND AUTHORITIES

### 1.  Grow's Exceptions to Agreeing with Defendants' Statement of Undisputed Facts

      Grow's opposition (Doc #159) agrees with Defendants' statement of undisputed

1   facts but with certain exceptions. The first exception is the "characterization of Kevin

2   Youngfleshs' (sic) promotion to Lieutenant." (Doc #159 2:12-13) Defendants' motion

3   states "Defendant Youngflesh was the top candidate as rated by an independent panel,

4   the Lieutenants Oral Board; Grow was rated third of five, with half as many points as

5   Youngflesh.  (Exhibit 58, U000791)."  (Doc #133, 3:4-6.)  Because Grow raised this, and

6   the other issues discussed infra, defendants reply by attaching hereto as **Exhibit 1** the

7   affidavit of Commander Ed Rinne, the custodian of those documents at UNRPD which

8   attaches and authenticates Exhibits 16, 18 & 44 (duplicates), 25, 46 and 58.

9          Grow also takes exception with the facts concerning, "the application of certain

10  policies and procedures regarding shift bidding and sick leave".   (Doc#159 2:13-14)

11  Defendants' motion Doc#133 4:22-28 states:

12              The UNRPD policy regarding shift bidding by officers is set forth
                in General Order No 09-001,  Exhibit 16.  The policy regarding

13              shift assignment of supervisors/sergeants is different from that
                of officers and is also set forth in General Order No 09-001.

14              Sick leave for classified employees (such as Plaintiff Grow) is
                governed by the Nevada Administrative Code, (See Exhibit 17,

15              NAC 284.566 Plaintiff's DOC 003364,) and for UNRPD patrol
                officers  by  General  Order  No:  03-001  (See  Exhibit  18,

16              Defendants' Doc U001320 -1327, specifically section VII, F.(1)
                at 1322).

17

18          Please see **Exhibit 1** the affidavit of Commander Ed Rinne, which authenticates

19  Exhibits 16, 18 & 44 (duplicates), 25, 46 and 58.  Therefore the "characterization of Kevin

20  Youngfleshs' (sic) promotion to Lieutenant" and the "the application of certain policies and

21  procedures regarding shift bidding and sick leave" cannot be disputed and the supporting

22  evidence is now properly before the Court.

23          Grow has provided no evidence of adverse actions related to the shift bidding or

24  sick leave policies. Grow filed a Whistleblower Complaint after the Complaint herein

25  which included this issue.  A hearing was held in that Whistleblower matter concerning

26  solely this issue of shift bidding by sergeants and evidence taken before the Nevada

27  State Personnel Commission Hearing Officer, attorney Jay Short.   The affidavit and

28

decision of the Hearing Officer[1] is attached and incorporated herein by reference as **Exhibit 2.** Defendants offer the facts recited therein as their statement regarding this issue. The decision is supported by exhibits referred to in the decision which display that all the sergeants were assigned shifts equally and consistently. The exhibits are attached to the affidavit of Commander Rinne attached hereto as **Exhibit 3**. Affidavits of Commander Renwick[1] and Director Garcia are attached hereto as **Exhibit 4** and **Exhibit 5**. These exhibits provide unrefuted facts that the decision to return the sergeants to assignment of shifts was made as a result of the Director learning the policy was not being followed when he heard of a dispute about seniority between Sergeants Connelly and Osowski, not any "speech" by Grow. All sergeants were treated equally under the shift assignment policy. There was no retaliatory or disparate treatment of Grow. This issue is yet another red herring by Grow.

Grow's exception to the fact "Lieutenant Youngflesh held Sergeant Grow accountable for his actions," although true and supported by authenticated exhibits, is of no import to this motion. Defendant Youngflesh was dismissed on summary judgment.

**2. Grow fails to provide specific evidence of retaliation or discrimination**

Specific instances of alleged discrimination and/or retaliation related to alleged protected activity are not set forth in Grow's opposition (Doc #159). Rather they are referred to in generalities in order to confuse the Court and avoid dealing with Defendants' specific arguments on each and every action alleged by Grow. All instances of alleged discrimination and/or retaliation from Grow's Complaint were elicited in Grow's deposition and were set forth in Defendants' motion by attaching Grow deposition testimony. Grow's opposition does not demonstrate a nexus between alleged protected activity and alleged retaliation, nor between any classification and alleged discrimination. It does not specify what facts and evidence he claims support each and every alleged claim and alleged adverse action. Instead, Grow's opposition makes more bald

---

[1]The affidavits have been approved by the affiants. Signed and notarized affidavits will be provided when received, in a supplement to this reply.

3

1  allegations, unsupported by evidence and based upon speculation, conjecture and
2  Grow's personal, erroneous opinions.   Grow's opposition does not address the fact
3  argued by Defendants that several of the instances of alleged retaliation or alleged
4  disparate treatment are barred by the Statute of Limitations and does not address the fact
5  argued by Defendants that several alleged instances of retaliation cannot be retaliation
6  because they occurred before the alleged protected activity.

7      The Court's Order (Doc #130) stated, "the court notes that beyond Plaintiff's
8  deposition testimony vaguely referring to 'discrimination' and 'internal affairs' complaints,
9  neither party has provided the actual complaints Plaintiff submitted or testimony
10 conveying the specific content of the complaints."   In response to this, Defendants have
11 provided all known documentation regarding alleged "discrimination" and "internal affairs"
12 complaints, if any, which Grow revealed in deposition testimony in discovery.   The lack of
13 supporting evidence for Grow's deposition testimony vaguely referring to "discrimination"
14 and "internal affairs" complaints is Plaintiff's, not Defendants', responsibility.   Defendants
15 have nevertheless presented all the known, relevant evidence there is in this case.   If
16 Plaintiff claims "discrimination" and "internal affairs" complaints, but is unable in two
17 oppositions to provide evidence of them, that should not preclude summary judgment.   To
18 the contrary, Plaintiff Grow's lack of supporting evidence shows there is no genuine issue
19 of material fact and Defendants are entitled to summary judgment.

20 **3.  Grow seeks to add claims not alleged in his Complaint**

21     Grow's opposition appears to argue vague causes of action which he did not allege
22 in his Complaint and which are not defined in his opposition.   Grow argues some claims
23 which are at issue in his other three lawsuits against these defendants in Nevada state
24 court. (e.g. the July 10, 2008 reorganization, flattening the chain of command of UNRPD
25 in accordance with the recommendation of the independent study by The Results Group
26 Ltd, by eliminating all sergeant, lieutenant and Associate Director positions).   This is the
27 subject of Grow's state court Complaint in Case No.:CV08-01974, **Exhibit 6**, wherein
28 Grow alleges his "demotion" as part of the reorganization of the department was

4

retaliatory for his filing this present federal case and for speech alleged herein.  This tactic, of including matters not at issue herein, is Grow's attempt to circumvent Defendants' meritorious arguments concerning Grow's § 1983, and First Amendment claims. Grow's failure to address those arguments with Points and Authorities is acquiescence to them being granted, LR 7-2(d).  Please also see, *Desrochers v. City of San Bernadino*, No. 07-56773, D.C. No. CV-06-01408-VAP, filed July 13, 2009, *Conklin v. City of Reno*, 2010 U.S. Dist. LEXIS 10735, and *Huppert v. City of Pittsburg*, No. 07-16600, D.C. No. CV-05-01433-JL.

Grow's opposition seeks to add  "expressed grievances" which Grow either failed to disclose in discovery or which allegedly occurred subsequent to the March 4, 2007 filing of the Complaint herein and thus could not have been the basis for alleged prior retaliation set forth in the Complaint.  Some are excerpts from his employee grievances. Some were communicated to no one.  In essence, Grow seeks to confuse the Court by lumping together many years of <u>alleged</u> protected activity, regardless of its timing or relationship to his job responsibilities and by lumping them together with many years of alleged retaliation and discrimination regardless of their timing or qualified immunity.  He then baldly argues there is a nexus among them which he cannot support with any evidence and which in many instances is impossible due to timing (e.g. the alleged retaliation preceded the alleged protected activity or the claim has expired pursuant to the two year statute of limitations).

**4.  Grow is attempting to wrongly "constitutionalize" his employee grievances**

Grow's opposition, and particularly the exhibits attached to his affidavit (ostensibly to support his "vague deposition testimony" (Doc #130)) instead support Defendants' argument Grow is attempting to "constitutionalize" his employee grievance which the U.S. Supreme Court has held is not permissible.  *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, U.S., 1983 and *Garcetti v. Ceballos*, 126 S.Ct. 1951, 2006 74 USLW 4257. Further, the alleged speech by Grow in those exhibits cannot survive the sequential, five-step First Amendment retaliation analysis set out by the Ninth Circuit in *Eng v.Cooley*,

1   552F.3d 1062 (9th Cir. 2009).

2        Defendants demonstrate infra that the exhibits to Grow's affidavit/opposition are

3   the same issues already before the Court on Defendants' motion (e.g. grievances of

4   discipline and annual evaluations), have been already decided by the court, or were

5   created by Grow since the filing of the Complaint and thus cannot have motivated the

6   alleged adverse actions which preceded them as alleged in the Complaint filed March 4,

7   2007.

8        In the Opposition, "Section c." Grow argues, "The Defendants offer unacceptable

9   pretext for the disparate treatment" (12:26-15:23,) once again Grow makes the meritless

10  argument that the orders given to UNRPD officers to cut back on traffic stops on the

11  streets surrounding the campus trying to fish for DUI's and instead focus on safeguarding

12  the University students, faculty, staff and property on campus, was an "illegal order" to not

13  arrest any observed DUI's.  This flies in the face of the facts presented in Defendants'

14  Motion, Doc #133 (25:17-28:12), as well as the District Court and 9th Circuit Court of

15  Appeals holdings concerning this same order in the Hague case.  Grow and Hague were

16  motivated by their desire to be perceived as "law enforcement" officers not mere door

17  shaking "security guards."   This mindset is documented in Grow's Exhibit 17, his

18  November 26, 2007 Memorandum to Lt. Rinne (see p.1, "(1) Problem") Grow and Hague

19  believed making minor traffic stops in search of DUI's is more of a "law enforcement"

20  activity than checking for locked doors on campus and letting professors who had

21  forgotten their keys into a building, which they perceived as "security guard" type work.

22  Unfortunately, Grow and Hague's actions of disobedience illustrate they believed they

23  had a greater right than their superiors to set the priorities and policies of the department.

24  This mindset is at the crux of all Grow's discontent with the UNRPD administration.

25        In order to not exceed the page limitation for this Reply, Defendants hereby

26  incorporate their argument "The issue of orders re 'fishing' for DUI's off campus" from

27  their Reply, Doc 117, 6:1–13:13, as though fully set forth herein.

28  / / /

6

1

**5.  Immunity**

2
3
4
5
6
7
8
9
10
11

      Grow's argument regarding immunity focuses only on sovereign/governmental immunity but fails to effectively respond to Defendants' qualified immunity argument. There is no evidence or argument proffered by Grow that defendants took any actions toward him which they could have believed to be unlawful.  To overcome qualified immunity, a plaintiff must show evidence that the actions alleged "are actions that a reasonable officer could have believed [to be] unlawful." *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987).  This burden is not satisfied by relying upon bare allegations or assertions of abstract rights.  *Id.*  Under the undisputed facts and circumstances here, a reasonable officer in the position of the individual defendants clearly could not have believed the actions taken with regard to plaintiff Grow were unlawful.

12

**6.  Grow's Opposition Affidavit and Exhibits Thereto**

13
14
15
16
17
18
19
20
21
22

      Exhibit 12, is a copy of Grow's first of five Whistleblower (WB) Complaints.  It is nonsensical for Grow to claim the alleged retaliation in his Complaint herein was done in retaliation for filing this Whistleblower Complaint.  This is impossible because Exhibit 12 was filed May 15th, 2007, under the Complaint herein March 4, 2007.  WB's #'s1-4 were decided against Grow by the Nevada State Personnel Commission Hearing Officer and there is a pending motion to dismiss WB #5 (which claims reorganization of the entire UNRPD in accordance with the recommendation of The Results Group's independent study is a retaliatory demotion aimed solely at Grow).  As discussed herein that same claim is being made by Grow in Nevada state court Case No.:CV08-01974, **Exhibit 6**. This exhibit fails to satisfy the 5 steps inquiry of the *Eng* case supra.

23
24
25
26
27
28

      Exhibit 13 appears to be a handwritten note by Grow to himself which he produced in this litigation.  Grow offers no evidence of retaliation allegedly resulting from this "speech."  The remaining part of Exhibit 13 is a February 21, 2006 Memo from Officer Garlock to Lt. Rinne which does not relate to Grow's claims herein whatsoever.  It might be assumed Grow attached the handwritten part of this exhibit to the Memo to save it for later use and labeled it an example of what he believed to be "unsafe vehicles" and

7

"inadequate training," but the documents are not consecutively numbered. There is no evidence whatsoever he ever published it to anyone or that Defendants were aware of it before its production in this lawsuit. It is deceitful of Grow to now designate this exhibit as one of "my written complaints."  This exhibit cannot survive the five-step inquiry of the *Eng* case supra.

Exhibit 14 is a June 23, 2007 Memo from Grow to then Associate Director Renwick.  This cannot have motivated adverse actions which allegedly preceded it per Grow's March 4, 2007 Complaint herein.  Once again Grow attempts to retroactively create a protected activity.  Please note Grow's memo states it is his "job" to communicate his allegation of misconduct by Officer Jaime McGuire.  Grow was not speaking on a matter of public concern and was not speaking as a citizen but as an employee/officer.  Officer McGuire is the same female officer involved with Grow in the "University Inn Bomb Incident."  Given the counter formal complaints they made against one another regarding the September 2006 "University Inn Bomb Incident" it is clear Grow made this report as a grudge against her and it "does not substantially involve a matter of public concern."  *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir.1995.)

Just as the Court stated in Doc. #131, regarding Grow's report of Neglect of Duty against Youngflesh,

> Viewed in light of the content, form and context of Plaintiff's complaint, the court finds that Plaintiff has failed to meet his burden of demonstrating that his statement "can fairly be considered as relating to a matter of political, social, or other concern to the community."  See *Desrochers*, 572F.3d at 717 (citation omitted).  Although the content of Plaintiff's speech addressed, in part, the functioning of the police department, "speech not otherwise of public concern does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." Id. (quoting *Connick*, 461U.S.at 148 n.8).  The Ninth Circuit has stated,

> In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern.

8

1
2
3

*Johnson v. Multnomah County*, 48F.3d 420, 425 (9thCir.1995).
This is such a case. Accordingly, summary judgment is appropriate.

4
5
6
7
8
9
10
11
12
13

Exhibit 15 is another example of an attempt to deceive by Grow. This first includes a 2/2/07 memorandum from Sgt. Grow to Lt. Youngflesh "Items from LEEDA training of interest."  Grow's memo to Lt. Youngflesh concerned UNRPD mandatory LEEDA training Grow attended.  Please see affidavits of Ed Rinne, Todd Renwick and Adam Garcia, **Exhibits 3, 4 and 5**.  The Memo describes what Grow was going to do to make himself a better supervisor.  It was an internal communication from a sergeant to his supervisor, on Department letterhead, specifically about Grow's job duties.  These Defendants did not see this Memo until now.  This alleged speech does not survive the five-step inquiry outlined in *Eng*, supra; it was made pursuant to Grow's job duties and is not on a matter of public concern.

14
15
16
17
18
19
20
21
22
23
24
25

Exhibit 15 then includes many of the documents from Grow's employee grievance of the two written reprimands Lt. Youngflesh gave Grow on January 18, 2007 concerning the September 26, 2006 "University Inn Bomb Incident."  This was also claimed by Grow to be First Amendment protected activity in Grow's claims against Defendant Youngflesh, which the Court has dismissed on motion for summary judgment, holding Grow's grievances were personal and/or personnel matters.  *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, U.S., 1983.  Plaintiff Grow was not speaking as a citizen when he filed a formal grievance, but was attempting to resolve an individual personnel dispute regarding his job performance and written reprimands.  See *Connick*, 461 U.S. at 148, n. 8 (matters of public concern are generally "not tied to a personal employment dispute.").  Please see discussion supra re Exhibit 14.  This exhibit fails to satisfy the five-step inquiry of the *Eng* case supra.

26
27
28

Finally, Exhibit 15 contains documents from Grow's grievance of a written reprimand of October 24, 2003 concerning Grow's failure to obtain identification from 30 individuals encountered on campus at night in camouflage clothing.  Grow has not

9

claimed or revealed in discovery that this is alleged protected speech.  If that is what he now argues, his opposition is the first time he has taken that position.  He testified this written reprimand was an example of an adverse action.  Please see Motion Doc 133 at 30:18-23.  The statute of limitations applies to preclude a claim that this was an adverse action.  Additionally, this is an employee grievance made as an employee, not a citizen, and is not on a matter of public concern under the *Connick*, *Garcetti* and *Eng* cases supra.

Exhibit 16 contains a copy of Grow's Annual Employee Evaluation for the 2006 year.  The Court's Order, Doc 131, states at p.6 fn 4, "Plaintiff also initially alleged that his complaints about his negative annual employment evaluation addressed a matter of public concern.  Plaintiff now concedes that this speech is not protected by the First Amendment."  Grow cannot now espouse a contradictory position.  Further, this alleged speech does not survive the five step inquiry outlined in *Eng, supra.*

Exhibit 17 is a November 26, 2007 Memo from Grow to then Lieutenant Rinne.  Grow's memo reveals in its first sentence it was done at the instruction of his superior, Director Garcia and it was therefore pursuant to his job responsibilities and duties.  Yet Grow has the temerity to argue it is a matter of public concern, not part of his job duties and ought to be afforded First Amendment protection.  Grow offers no evidence of retaliation allegedly resulting from this "speech."  It was also sent after the Complaint.  This exhibit fails to satisfy the five-step inquiry of the *Eng* case supra.

Exhibit 18 is a page of an undated memorandum entitled "Vote of no confidence in Director Adam Garcia"  This appears to be the cover page to the two signature pages attached as Grow's Exhibit 24.  The two signature pages are consecutively numbered after the Memorandum page and the three were produced together.  The dates of the signatures are all after the filing of the Complaint herein on March 4, 2007.  Thus, this memorandum could not have been sent before that date and could not have motivated the alleged adverse actions asserted in the Complaint.  The memorandum is not addressed to anyone i.e., it does not show if it was sent or, if sent, to whom it was sent.

1    This is yet another attempt by Grow to retroactively create a protected activity.  However,

2    this memo cannot have motivated adverse actions which Grow has alleged in his

3    Complaint because it had to have been sent approximately one year after the Complaint

4    was filed.  This alleged speech does not survive the five-step inquiry outlined in *Eng*,

5    supra.

6            Exhibit 19 appears to be Grow's Annual Evaluation for the year 2007.  Grow's

7    Opposition does not mention Exhibit 19.  Additionally, the Court's Order, Doc131, states

8    at p.6 fn 4, "Plaintiff also initially alleged that his complaints about his negative annual

9    employment evaluation addressed a matter of public concern.  Plaintiff now concedes that

10   this speech is not protected by the First Amendment."  Grow cannot now espouse a

11   contradictory position.  The evaluation was after the Complaint herein.  Moreover, this

12   alleged speech does not survive the five step inquiry outlined in Eng, supra.

13           Exhibit 20 appears to be a Memorandum from then Sergeant Osowski to all law

14   enforcement members of UNRPD concerning Officer Cromwell taking over as Range

15   Master and thanking Grow for his previous work in that position.  Grow's opposition does

16   not mention Exhibit 20.  There is no speech by Grow supported by this document; this

17   alleged speech does not survive the five-step inquiry outlined in *Eng*, supra.

18           Exhibit 21 appears to be a handwritten note by Grow to himself stating that Sgt.

19   Osowski said that Ofcr. Cassaca said Chief Garcia took negative PEW's (performance

20   evaluation worksheets) out of Cassaca's file.  This is hearsay stacked upon hearsay.

21   Fed. R. Ev. §801.  The document was not published or communicated to anyone.  This

22   document cannot be used to support any of Grow's arguments and there appears to be

23   no attempt in the opposition to do so.  This alleged speech does not survive the five-step

24   inquiry outlined in *Eng*, supra.

25           Exhibit 22 is a Memorandum dated September 5, 2007 to Lt, Rinne from Sgt.

26   Osowski.  Grow's opposition makes no argument concerning this exhibit; it is not a

27   communication by Grow and does not show an adverse action against him.

28           Exhibit 23 is the March 3, 2005 Memorandum from Lt Rinne to Sgt. Grow placing

1   him on a work performance program regarding the traffic stops/DUI issue.  Grow was

2   placed on a Work Performance Improvement Program and moved from graveyard to day

3   shift where there would be a superior officer, a lieutenant, available to supervise Grow

4   (there was no lieutenant on graveyard shift at that time).  From defendants' perspective at

5   the time, the DUI issue was peripheral to the reason these actions were taken.  Grow was

6   not spending sufficient time on patrol with his subordinate officers.  Please see Exhibit 33,

7   to Motion, Doc U001331, which sets forth the work performance plan Grow was placed on

8   by Lt. Rinne, memorialized by a memorandum to Grow on <u>March 3, 2005</u>, and the

9   reasons for it. Importantly, this was done more than 2 years before this lawsuit was filed

10  on <u>March 4, 2007</u>, so this claim of adverse action is <u>barred by the statute of limitations</u>.

11  Moreover, this action was not only taken for solely legitimate, non-retaliatory reasons, but

12  it was also not materially adverse.  See *Oncale*, 523 U.S. at 80; and *Faragher* 524 U.S.

13  775, 788 (1998).  Grow's opposition makes no attempt to refute this.  It is significant to

14  note that until Grow filed this lawsuit, defendants did not know Grow was intentionally

15  disobeying orders.  Such "disobeying" of orders is what he alleges herein to be his

16  "speech on matters of public concern."   Grow did not tell defendants that he was

17  intentionally disobeying orders and there is no evidence in the record that he revealed this

18  to defendants.  Thus defendants could not have been retaliating for speech they were

19  unaware of.  It had previously appeared Grow was just ineffectual in supervising his

20  subordinate officers as instructed, to focus on the campus rather than patrolling the

21  streets around campus fishing for DUI's, because he was not spending enough time on

22  patrol with his subordinate officers.  It is respectfully requested the Court's findings of fact

23  include that Grow intentionally disobeyed orders (as he has alleged. Doc #1 Para XXII.)

24  Please also see discussion supra at 6:7 re the Opposition, "Section c."

25      <u>Exhibit 24</u> appears to be the second two pages of the vote of no confidence

26  Memorandum, the cover page of which appears to be attached as Exhibit 18.  Please see

27  discussion under Exhibit 18 supra.

28      <u>Exhibit 25</u> is Grow's copy of the July 10, 2008 Memorandum to all sergeants from

then UNR Asst. V.P. of Human Resources, Gena Jones, about the reorganization of University Police Services.  There was a reorganization of the entire UNR Police Services in July 2008.  The positions of <u>Sergeants</u>, <u>Lieutenants</u> and the <u>Assistant Chief</u> were eliminated.  This affected all such persons in the department, including defendants Renwick and Rinne, not just then Sergeant Grow, as he wrongfully implies.  Grow's and others' classified employee positions were reclassified pursuant to Nevada law and the Nevada Administrative Code.  His pay was not changed.  These defendants individually and collectively did not have authority to unilaterally make the decision to reorganize. The reasons for the decision by UNR administration were to provide for more line officers despite the deteriorating fiscal condition of the state and based upon a recommendation of an independent consulting group which specializes in helping law enforcement entities. The report of that group's thorough audit and assessment of UNRPD is set forth in The Results Group Ltd., Organizational Assessment dated July 1, 2008.  Please see **Exhibit 1 to Reply Doc #117** (Plaintiff's doc 003621) at p.11, Summary of Recommendations 2 (d) and p. 25 et seq., "Recommendation 2 (d) Restructure/Refocus the Entire Organization." It is critical to note this restructuring is the subject of another lawsuit by Grow in the Second Judicial District Court for the State of Nevada, CV08-1974. Please see **Exhibit 2 to Reply Doc #117**, Complaint at paragraph 17.  The reclassification was approved in advance by the State Director of Personnel.  Grow (and former Sergeant Osowski) also appealed the reclassification to the State of Nevada Personnel Commission, which denied the appeal.  Please see **Exhibit 3 to Reply Doc #117**, the Meeting Minutes of Friday December 19, 2008, Section VI (E).  There is no nexus between the reorganization and activities by Grow.   The reorganization affected many others including two defendants, not just Grow alone. Grow has no viable material adverse employment actions upon which to rely in his opposition to summary judgment so he seeks to make this unrelated event an adverse action.

This "demotion" issue is not alleged in the complaint in this case and should not be at issue herein.  These new allegations were added to the opposition to mislead the Court

1    to believe Grow is a victim of retaliation, which is false.  This is, unfortunately, a recurring

2    tactic of Plaintiff's former counsel, to raise the same claims repeatedly in multiple lawsuits

3    and in different jurisdictions.  However, because Grow has raised these matters in this

4    case, defendants respectfully submit, in the event the Court considers such new

5    allegations, defendants have shown that there were and are solely legitimate, non-

6    discriminatory, non-retaliatory reasons for such actions and Grow was not singled out.  In

7    the event the Court makes conclusions based upon these new allegations, it is

8    respectfully requested that the Court make specific findings of fact and conclusion of law,

9    that there were solely legitimate, non-discriminatory, non-retaliatory reasons for the July

10   1, 2008 reorganization of UNRPD and elimination of all Sergeant, Lieutenant and

11   Associate Director positions, to make a clear record for purposes of claim preclusion

12   and/or issue preclusion in the interest of judicial economy.

13       Exhibit 26 is Grow's psychiatric expert's report. Damages are not at issue in this

14   motion so this exhibit is irrelevant.

15       Exhibit 27 is excerpts from an independent assessment of UNR Police Services by

16   Balaam & Associates LLC, headed by former Washoe County Sheriff Dennis Balaam.

17   The Balaam and Results Group studies were both commissioned by the University.

18   There is no speech by Grow in this document.  Grow's opposition makes bald assertions

19   of having made statements, none of which are supported by any evidence whatsoever.

20   The depth of Grow's convoluted deceit is revealed in his opposition (Doc#159 9:9-15)

21   when he argues, "Exhibit 27 includes excerpts from the Assessment by Balaam and

22   Associates dated June, 2007.  Some of the recommendations address the very same

23   areas of concern raised by Mr. Grow in his statements to his supervisors, the State

24   Attorney General and the Union.  For instance, in the area of Staffing Levels and

25   Personnel Utilization, Mr. Grow questioned the hiring practices and the University's

26   pretext of budget cuts to eliminate the position of Sargent (sic) (thus eliminating the

27   position of the four Sargent (sic) who signed the Votes of Nonconfidence (sic) in Chief

28   Garcia)."  First, there is no evidence that Grow made those "statements" to any of the

14

1 stated persons or entities.  Serial litigants against UNR & NSHE: Grow, Hussein Hussein,

2 Terry Patraw and Richard Scweickert's visit with the Attorney General took place in April

3 2008 (Exhibit 2, Decision 2:13-19) after the Balaam report and after the Complaint.  The

4 "Union" referred to by Grow is actually an non-governmental association of some law

5 enforcement personnel and acts as Grow's agent in grievances, internal affairs

6 investigations and personnel matters.  Moreover, if Grow had, arguendo, made

7 statements to the Balaam or Results Group investigators, he did so as a part of his official

8 job responsibilities or duties and was speaking as an employee, not as a citizen and not

9 on a matter of public concern.  Second, the attempt to relate the Balaam report and

10 Grow's alleged statements with the reorganization of the department more than one year

11 later in July 2008 is another attempt to retroactively create protected activity.  Third, the

12 Balaam report and the Results Group report both took place after the filing of the

13 Complaint herein and thus the alleged adverse actions cannot have been motivated by

14 activity which took place <u>after</u> the alleged adverse actions.  Finally, there is no evidence

15 or documentation of when Grow made such alleged statements or that Defendants were

16 aware of them.  A plaintiff cannot rely solely on bald unsupported allegations to avoid

17 summary judgment. Fed. R. Civ. P. 56(e), *Farrakan v. Gregoire*, 590 F.3d 989 2010 U.S.

18 App. LEXIS 141.

19 　　Exhibit 28 contains excerpts from the Results Group Ltd. Organizational

20 Assessment which was attached in its entirety as Defendants' **Exhibit 1 to Reply Doc**

21 **#117**.  It is strikingly ironic that Grow has quoted the following language from the

22 Assessment, when it refers to his own conduct (e.g. suggesting to Officer Hague he did

23 not have to obey the order to cut back on traffic stops leading to DUI arrests, refusing to

24 order him to obey it and encouraging him to believe it was an "illegal order") and that of

25 his ilk,

26 　　　　We believe that selected information and/or guidance from the
Board of Regents, from President Glick, Vice President Zurek

27 and from **Chief Garcia to his employees is all too frequently
and intentionally filtered, intentionally mutated,**

28 **intentionally skewed, and otherwise changed based on the
attitude and personal agenda of the story teller.**  This, in our
opinion, deliberate and unacceptable behavior and is a huge

1
2
3

> contributor to the genesis and perpetuation of hurt feelings,
> rumors, gossip, and downright lies.  It is the fodder for
> dysfunction and, if left unchecked, will be a major contributor to
> the ultimate dissolution of this agency.
> Opposition Doc159, 9:26-10:3

4  Indeed the additional language quoted by Grow (Doc 159 10:6-11,) indicts the

5  supervisors (sergeants.) Grow has thus contributed to a toxic environment, has been

6  complicit in inciting divisiveness and a resulting hostile work environment.  Yet he now

7  disingenuously asserts he is the victim.  There is no genuine issue of material fact. Grow

8  has not demonstrated he was subjected to a hostile work environment.  The Results

9  Group Assessment does not confirm a hostile environment aimed at Grow, but a

10  department-wide hostile environment heavily contributed to and created by Grow.  There

11  is nothing in this exhibit which supports Grow's claims.

12  Exhibit 29 appears to be another example of Grow's notes to himself, related to

13  Grow's disagreement with and grievance of his 2006 Annual Evaluation.  There is no

14  evidence this was published or communicated to anyone, other than perhaps included in

15  his Grievance of the evaluation.  Please see discussion of Exhibit 16 supra.  This alleged

16  speech does not survive the five step inquiry outlined in *Eng, supra.*

17  Exhibit 30 is Grow's Formal Complaint of Neglect of Duty against Lt. Youngflesh

18  which the Court addressed in Order, Doc#131, "Viewed in light of the content, form, and

19  context of Plaintiff's complaint, the court finds that Plaintiff has failed to meet his burden of

20  demonstrating that his statement 'can fairly be considered as relating to a matter of

21  political, social, or other concern to the community.'"  *See Desrochers*, 572 F.3d at 717

22  (citation omitted.)"  This alleged speech does not survive the five step inquiry outlined in

23  *Eng, supra.*

24  **7.  The Application of the Court's Order Granting Summary Judgment to Co-**

25  **Defendant Youngflesh**

26  This Court has held in its Order (Doc 131),

27
28

> Plaintiff argues the following speech addressed matters of
> public concern: (1) complaints about Defendant Youngflesh's
> failure to send evidence to the crime lab for testing and (2)
> expressing his opinion that UNRPD should have terminated
> Defendant Youngflesh for being convicted of driving under the

16

influence. fn 4:

> Fn 4.Plaintiff also initially alleged that his complaints about his negative annual employment evaluation addressed a matter of public concern.  Plaintiff now concedes that this speech is not protected by the First Amendment. (Doc 131 6:20-26).

**Neglect of Duty Complaint against Youngflesh**

With regard to Grow's Neglect of Duty Complaint against Youngflesh, the Court granted Youngflesh's motion for summary judgment, (Doc 131) stating, "the form and context of the statement indicate that the statement was intended to highlight a workplace grievance rather than to provide information relevant to the public's evaluation of the police department's performance."  Grow's claim against these Defendants based on this same alleged speech should also be dismissed on summary judgment.

**Plaintiff's Opinion Regarding Defendant Youngflesh's Termination**

The Court has held, "Accordingly, the Court finds that Plaintiffs opinion regarding UNRPD's failure to terminate Defendant Youngflesh did not address a matter of public concern." (Doc 131) Grow's claim against these Defendants based on this alleged speech should also be dismissed on summary judgment for the same reason.

**Discrimination**

The Order (Doc 131) states, "Defendant Youngflesh first challenges Plaintiff's ability to demonstrate genuine issues of material fact with regard to his gender-based discrimination claim. In his opposition, Plaintiff fails to present arguments or evidence challenging Defendant Youngflesh's contentions.   Accordingly, the court will grant summary judgment with regard to Plaintiff's gender discrimination claim." (Doc 131) These defendants are entitled to summary judgment on this claim for the same reasons.

With regard to Grow's age discrimination claim the Court held, "…, the Ninth Circuit recently held, '[T]he ADEA precludes the assertion of age discrimination in employment claim's, even those seeking to vindicate constitutional rights, under §1983." *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555F.3d 1051,1053 (2009).  Accordingly, the court will grant summary judgment with regard to Plaintiff's age discrimination claim." (Doc 131).  These

1    defendants are entitled to summary judgment on this claim for the same reasons.

2    **Equal Protection**

3         The Court held, in its Order Doc 131, "In his opposition, Plaintiff has failed to cite to

4    any evidence suggesting that Defendant Youngflesh discriminated against Plaintiff

5    because he is not addicted to alcohol.   Accordingly, summary judgment is appropriate.

6    The same is true of these defendants.   Grow's only argument is that "Garcia treated

7    Youngflesh favorably, promoting him after a DUI."  Doc 159, 17:17-18 Grow has failed to

8    cite to any supporting evidence regarding these defendants.    Further, Defendants'

9    unrefuted evidence (please see Exh. 58 to Rinne affidavit, attached hereto as Exhibit 1,)

10   disproves Grow's claim.   Grow's reliance on *Gypsum Res., LLC v. Masto*, 672 F. Supp.

11   2d 1127, is misplaced.  The language quoted discussed an Equal Protection claim and

12   whether the test of a rational relation to a legitimate state interest will "sustain conduct by

13   state officials that is malicious, irrational, or plainly arbitrary."  *Gypsum,* supra at 1141.

14   Here, there is no evidence of any such conduct by Defendants nor evidence that Grow

15   has been "intentionally treated differently from others similarly situated and that there is

16   no rational basis for the difference in the treatment."  On the contrary, Defendants have

17   demonstrated a legitimate, rational, non-pretextual basis for all actions which Grow has

18   labeled as adverse.  The *Gypsum* court went on to state, "State action survives rational

19   basis review if "there is any reasonably conceivable state of facts that could provide a

20   rational basis for the challenged law."(citations omitted) Summary judgment for these

21   defendants is appropriate on this claim.

22        **Allegation of Addiction to Alcohol and the Fourteenth Amendment Claim**

23        The opposition at page 17:26 states, "Rumor had it that Garcia's University of

24   Phoenix students had to bring him Budweiser."   This illuminates Grow's disingenuous

25   approach to this entire case.   Rumor, hearsay and innuendo are all Grow has to rely

26   upon, however they cannot, and do not create "a genuine issue of material fact."

27        Grow's opposition has also retreated from the specific allegation of his Complaint,

28   "disability, addiction to alcohol" and instead falsely asserts, "The claim is Grow was

18

subjected to unique treatment because of his soberness…"  Doc 159, 11:26-12:1. Grow, faced with the realization there is no factual support for his actual allegation of "addiction to alcohol," purports to have retroactively and without Court approval, amended his allegations.  He does so for the wrongful purposes of conforming his revised allegations to his argument seeking to sidestep the application of *Engquist v. Oregon Dept. of Agriculture*, 128 S.Ct. 2146, U.S., 2008, to attempt to make his argument dovetail with the case he has cited, *Lazy Y Ranch LTD v. Behrens*, 2008 slip op. at 13783, 2008 U.S. App. LEXIS 20335 at *27-9 (9/26/08, 9th Cir. 2008), and to attempt to overcome his lack of evidence.  Here there is no competent evidence that defendant Garcia has a "disability, addiction to alcohol" as alleged in the Complaint or that there is a class of persons "addicted to alcohol" and thus no viable allegation of "classification," leaving only an allegation of "unique treatment" (though there is no evidence to support that, either) i.e., a "class of one" making *Engquist*, supra, applicable.

Grow's opposition states, "Garcia stated he was an alcoholic." Doc 159, 17:23. This is ludicrous in light of the evidence. There is no genuine issue of material fact. The only evidence is that Director Garcia's statement was made in jest. Every witness who was present testified that was said in jest. Incredibly, Grow clings to his argument that the sarcastic, joking reference to Grow's allegation in the Complaint by Director Garcia in some speeches, where he said, "Hi, my name is Adam Garcia and I'm an alcoholic." was an admission, despite the fact even Grow's own witnesses, Conley and Osowski, who were present (Grow wasn't) agreed that statement was made in jest. (Please see citations to testimony in motion) Grow's position on this issue is testament to the complete lack of credibility in his opposition arguments. It is unfortunate defendant Garcia has been forced to even respond to this spurious accusation, but to further refute this argument by Grow please also see affidavit of Adam Garcia attached as **Exhibit 9 to Reply Doc #117**.

Grow's opposition Doc 159, 17:16-18, states, "Defendants next assert that there are no facts to show Plaintiff was treated differently because of his lack of addiction to alcohol. But Garcia treated Youngflesh favorably, promoting him after a DUI."  This

19

argument by Grow purposely ignores the demotion of Youngflesh and period of unpaid leave as discipline for the DUI incident.   Also, the statute of limitations applies to Youngflesh's promotion to Sergeant on October 16, 2004; this lawsuit was filed more than two years later, on March 4, 2007.  With regard to Youngflesh' promotion to Lieutenant, the undisputed facts reflect he was the highest scoring candidate, scoring twice as many points as Grow with the independent Oral Board.   On July 21, 2006, Grow and others applied for a Lieutenant position which had opened in the UNRPD. Defendant Youngflesh was the top candidate as rated by an independent panel, the Lieutenants Oral Board; Grow was rated third of five, with half as many points as Youngflesh.  (Exhibit 58, to Rinne affidavit, Exhibit 1 hereto).   Youngflesh's promotion was based upon the employer's legitimate, non-discriminatory reason.  There is no evidence of discriminatory intent against Grow or differential treatment based on Grow's sham "addiction to alcohol" allegation.

Defendants have shown they made no such classification of persons with a "disability, addiction to alcohol," as asserted by Grow, there was no differential treatment of Grow based on any alleged classification or for any reason other than solely legitimate non-discriminatory, non-retaliatory reasons.

**Conclusion**

The undisputed facts and law establish Plaintiff Grow's claims herein are meritless; there was no protected activity or protected class, no retaliation or materially adverse actions, all actions were for legitimate non-discriminatory, non-retaliatory, non-pretextual reasons and/or are subject to qualified immunity because the defendants' actions were not actions that a reasonable officer could have believed to be unlawful.

WHEREFORE, it is respectfully submitted, Defendants' Motion for Summary Judgment should be granted on all of Plaintiff's claims, together with costs and fees.

/ / /

/ / /

/ / /

DATED this 26th day of April, 2010.

                     /s/   Frank Roberts
                  Assistant General Counsel
                  University of Nevada
                  Nevada Bar No. 914
                  1664 N. Virginia Street/MS 550
                  Reno, Nevada  89557-0550
                  (775) 784-3495
                  (775) 327-2202  fax
                  *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the Nevada System of Higher Education, over the age of eighteen years, that I am not a party to the within action, and that on the 26th day of April, 2010, a copy of REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, was delivered by electronic service to the following address by filing same in the Court's CM/ECF electronic filing service:

> MARIE MIRCH, ESQ.
> 444 WEST C STREET, SUITE 320
> SAN DIEGO, CA. 92101
> 2610 BEAUMONT PKWY
> RENO, NV 89523

> /s/   Joan Howard
> Employee of the University of Nevada, Reno of the Nevada System of Higher Education